IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Dr. Satyanarayan Hegde, <br><br> Plaintiff, <br><br> v. <br><br> Advocate Christ Medical Center, <br><br> Defendant. | Case No. 21-cv-2979 <br><br> Judge Mary M. Rowland |

### MEMORANDUM OPINION AND ORDER

Plaintiff Dr. Satyanarayan Hegde brings this action against Defendant Advocate Christ Medical Center. Hegde is a physician who alleges that Defendant refused to hire him and that such refusal constituted unlawful discrimination and retaliation against him in violation of federal law. Defendant now moves for summary judgment on all of Plaintiff's claims. For the reasons stated below, Defendant's motion for summary judgment [44] is granted.

### BACKGROUND[1]

**I. The Claims and Procedural History**

In this case *pro se* Plaintiff Hegde asserts four claims: discrimination under the Age Discrimination in Employment Act (ADEA) (Count I), discrimination under the Americans with Disabilities Act (ADA) (Count II), retaliation under Title VII of the Civil Rights Act of 1964 (Count III), and retaliation under the ADA (Count IV). [1] ¶¶

---

[1] The facts are taken from Defendant's Rule 56.1 statement and are undisputed unless otherwise noted. Defendant's Rule 56.1 statement is at Dkt. 49 ("DSOF"). Plaintiff's response to Defendant's 56.1 statement is at Dkt. 64 ("Pl. Resp."). Plaintiff did not file a separate Rule 56.1 statement of facts.

1

9–16. Originally Hegde was represented by counsel, filing his complaint on June 3, 2021. [1]. In March 2022, the Court granted his attorneys leave to withdraw and Hegde proceeded *pro se*. [25]. The operative complaint is the original complaint [1], as the Court denied Hegde's motion to amend his complaint in August 2022 [38].

## II.     Local Rule 56.1

In moving for summary judgment, Defendant initially argues that Hegde failed to comply with Local Rule 56.1.[2] "Local Rule 56.1 statements serve to streamline the resolution of summary judgment motions by having the parties identify undisputed material facts and cite the supporting evidence." *Laborers' Pension Fund v. Innovation Landscape, Inc.*, No. 15 CV 9580, 2019 WL 6699190, at *1 (N.D. Ill. Dec. 9, 2019). The Seventh Circuit has "consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1." *Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 414 (7th Cir. 2019) (quotation omitted). This applies as well to a *pro se* litigant. *See Coleman v. Goodwill Indus. of Se. Wis., Inc.*, 423 F. App'x 642, 643 (7th Cir. 2011) ("Though courts are solicitous of pro se litigants, they may nonetheless require strict compliance with local rules"); *Clay v. Williams*, No. 17 C 6461, 2020 WL 2836740, at *2 (N.D. Ill. May 31, 2020) (collecting cases).

Defendant argues Hegde violated LR 56.1(e) regarding the nonmovant's response and LR 56.1(b)(3) requiring additional facts must be set forth in a separate statement. The Court agrees Hegde did not strictly comply with LR 56.1 but need not address

---

[2] Defendant provided the required notice to Hegde pursuant to Local Rule 56.2 explaining what an unrepresented litigant opposing summary judgment must do. [45].

2

this further since for the reasons explained below the Court's analysis focuses on the timeliness issue.

### III. Hegde's Credentials and Application to Advocate

Hegde obtained his medical degree and did his residency in India. DSOF at ¶ 7. Between 2006 and 2011, he did a residency in general pediatrics and a fellowship in pediatric pulmonology at the University of Arkansas for Medical Sciences and Arkansas Children's Hospital. *Id.* at ¶ 8. In 2011, Hegde took his first job as a pediatric pulmonologist at the University of Florida. *Id.* at ¶ 9. After the University of Florida did not renew his contract, he worked at the University of Chicago in a similar role from approximately 2015 to 2019. *Id.* at ¶ 12. During that time, Hegde traveled between Chicago and Florida, where his family resided. *Id.* at ¶ 14. In November 2018, the University of Chicago decided not to renew his contract ending June 30, 2019. *Id.* at ¶ 15.

On or about May 10, 2019, Hegde reached out to the Division Director of Pediatric Pulmonology at Advocate Children's Hospital in Oak Lawn, Illinois, Dr. Shimoni Dharia about an opening for a pediatric pulmonologist position. DSOF at ¶¶ 16–17. On May 13, 2019, Hegde and Dharia had a 5-minute phone call. *Id.* at ¶ 19. Dharia regarded this as an entrance screening and based on the screening, she would decide whether to move Hegde forward in the recruitment process which generally next would have involved inviting him for an interview. *Id.* at ¶ 20. Dharia was looking to ensure the Division had adequate service for its growing volumes, the chosen physician was available to take adequate call and the Division could form a succession

3

plan for its cystic fibrosis ("CF") program. *Id*. at ¶ 21. During this conversation, Dharia told Hegde to forward his curriculum vitae to Advocate physician recruiter Nancy Mathieu, which he did on May 14, 2019. *Id*. at ¶ 24.

During the same timeframe, the Division was pursuing and made an offer to another candidate who had more CF experience, but this individual did not accept the job. DSOF at ¶ 26. Dharia's decision not to advance Hegde as a candidate was made within their initial interaction period and she did not revisit her decision. *Id*. ¶ 27. On May 31, 2019, June 18 and June 19, 2019 and July 18, 2019, Hegde reached out to Dharia and Mathieu for updates on his application for the position. *Id*. at ¶¶ 28–30. Mathieu shared with Dharia that Hegde had reached out on multiple occasions with repeated long, unprofessional, and aggressive messages asserting that he should be hired and giving reasons why. *Id*. at ¶ 45. Emily Gabrielson, Mathieu's replacement, felt the same way from her contact with Hegde, which solidified Dharia's earlier decision to not move forward with his candidacy. *Id*.

On October 10, 2019, Gabrielson informed Hegde that the Division had moved forward with another candidate. *Id*. at ¶ 35. Hegde then asked for feedback on his candidacy from Gabrielson who said she would obtain feedback. *Id*. at ¶ 36. In February 2020, in response to Hegde's February 9 and 11 emails asking for feedback about why he had not been selected for the position, Gabrielson responded that the Division was seeking a candidate with more CF experience, had not hired anyone, and was reevaluating their need. *Id*. at ¶ 37. Later in the evening of February 11, 2020, Hegde sent an email to Dharia and Gabrielson stating that he was confused

4

that Defendant was not interested in his candidacy and asked for a phone conversation, which Dharia had with him. *Id*. at ¶ 39. In August 2020, Hegde saw an advertisement of the position again and reached out to Gabrielson. *Id*. ¶ 40. On August 26, 2020, Hegde reapplied for the position by sending his resume to Dharia and Gabrielson. *Id*. ¶ 41. On October 14, 2020, Hegde reached out to Dharia and Gabrielson; that same day Gabrielson emailed Hegde thanking him for his continued interest and stating that they had filled the position. *Id*. at ¶¶ 42–43.

The pediatric pulmonologist who was hired in 2020 (age 34 at the time) was (1) interviewed by Dharia, other physicians in pulmonology and other relevant specialties, all who gave positive feedback, (2) had done her residency at Advocate Children's Hospital where Dharia supervised her and found her a strong candidate for the position, (3) was local and did not request call coverage, (4) received favorable feedback from her residency program coordinator, and (5) appropriately communicated during the recruiting and interview process. *Id*. at ¶ 46. In addition, the succession needs for CF program had changed. *Id*. at ¶ 47.

### IV. Hegde's Discrimination Allegations and EEOC Charge

On October 15, 2020, Hegde filed a complaint with Defendant's internal system stating for the first time that Defendant was discriminating against him, and he belonged to the protected categories of race, color, religion, sex, national origin, age and disability and previously opposed unlawful employment practice in the public domain. *Id*. at ¶ 67. On February 16, 2021, Hegde emailed Gabrielson and Dharia stating that publicly available data made him believe a new pediatric pulmonologist

5

had not been hired and that he was a "51-year-old, disabled, Asian Indian, naturalized American citizen, born and brought up in India and a practicing Hindu" who had engaged in protected activities — none of which should interfere with his ability to perform the essential functions of the position. *Id.* at ¶ 44. Gabrielson informed him that the position had been previously filled the prior fall and there were no other open pediatric pulmonology positions. *Id.* On February 26, 2021, Hegde filed another complaint with Advocate's reporting system also alleging discrimination and retaliation in connection with the decision not to hire him for the pediatric pulmonologist position. *Id.* at ¶ 69.

On March 8, 2021, Hegde filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) against Defendant alleging retaliation, age, and disability discrimination. *Id.* at ¶ 70.[3] There, he identified the first date of the alleged discrimination as October 10, 2019, when he was first told that he was not going to be hired or someone else had been hired for the pediatric pulmonologist position. *Id.* And he identified the latest act of discrimination as October 15, 2020 when Defendant informed him that someone else had been offered the position. *Id.* at ¶ 71. On March 10, 2021, the EEOC issued Hegde a Notice of Right to Sue. *Id.* at ¶ 4.

## SUMMARY JUDGMENT STANDARD

---

[3] Hegde's retaliation theory relies on a charge of discrimination he filed with the Illinois Department of Human Rights against his previous employer, the University of Chicago Medicine. Plaintiff contends this protected activity caused Defendant to retaliate against him because Defendant "has a close partnership with" University of Chicago. [63 at 1].

6

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id*. After a "properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Id*. at 250 (quoting Fed. R. Civ. P. 56(e)).

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [ ] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Logan v. City of Chicago*, 4 F.4th 529, 536 (7th Cir. 2021) (quotation omitted). The Court "must refrain from making credibility determinations or weighing evidence." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 467 (7th Cir. 2020) (citing *Anderson*, 477 U.S. at 255). In ruling on summary judgment, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.*

## ANALYSIS

Defendant argues that Hegde's claims are untimely. This Court agrees. Because Hegde's claims are not timely, the Court need not consider the merits of the remaining arguments on summary judgment.

## I. Exhaustion Requirement

An individual complaining of discriminatory conduct under the ADA, ADEA, and Title VII "must file a complaint with the EEOC within 300 days of the alleged unlawful conduct." *Edwards v. Illinois Dep't of Fin.*, 210 F. Supp. 3d 931, 942 (N.D. Ill. 2016); *see also Snider v. Belvidere Township*, 216 F.3d 616, 618 (7th Cir. 2000) (affirming district court's finding that plaintiff's Title VII claim was time-barred when the complaint was not filed with the EEOC within 300 days); *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 637 (7th Cir. 2004) (300 day time period applied to claims brought under the ADEA and ADA). A plaintiff is barred from filing suit if he does not bring the claim to the EEOC within 300 days. *See Riley v. Elkhart Cmty. Sch.*, 829 F.3d 886, 890–91 (7th Cir. 2016).

This requirement ensures an employer receives "prompt notice" of the claim (*see Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 121 (2002)), and it provides the EEOC an opportunity to investigate complaints and help the parties settle the dispute. *Moore v. Vital Prod., Inc.,* 641 F.3d 253, 257 (7th Cir. 2011) (citations omitted). The statute of limitations begins to run once the plaintiff learns of the allegedly discriminatory practice or decision. *See Begolli v. Home Depot U.S.A.*, 701 F.3d 1158, 1159 (7th Cir. 2012).

## II. Hegde Failed to Timely Exhaust his Administrative Remedies

Defendant argues that Hegde's March 8, 2021 EEOC Charge is untimely as it is more than 300 days from the last date of discrimination on October 10, 2019 when Defendant informed Hegde that it had moved forward with another candidate for the position. Hegde does not dispute that the 300-day rule applies to his claims. He argues, however, that his claims are timely because of "Defendant's continuing course of conduct." [63 at 4]. Hegde contends that he "could not have known until October 14, 2020 that he was rejected for the new pediatric pulmonology position." *Id.* In other words, Hegde's theory appears to be that he was initially discriminated against in 2019 when he was not hired to as a pediatric pulmonologist, and then again when he re-applied for the same position in 2020, when the position was still open (and the requirements had changed, according to Hegde), and he was still not hired.

Hegde does not dispute that:

- On October 10, 2019, Gabrielson informed Hegde that the team had moved forward with another candidate. DSOF ¶ 35.
- In February 2020, Hegde knew he was not hired and sent emails to Defendant asking why he had not been selected and asking why Advocate was "not interested in [his] candidacy". *Id.* ¶¶ 37, 49.
- He testified in his deposition that October 10, 2019 was when he was told the team had moved forward with another candidate. [50-1] Ex.1, 111:7–11.

It is also undisputed that when Defendant re-started its search, Hegde saw a "fresh advertisement of the position" and, after Hegde reapplied, Gabrielson emailed Hegde thanking him for his "continued interest" and stating that they had offered the position to another candidate. *Id.* at ¶¶ 42–43.

Hegde relies on the continuing violation doctrine. Under that doctrine a "plaintiff may recover for otherwise time-barred conduct that is part of a single, ongoing

9

unlawful employment practice if at least one related act occurs during the limitations period." *Barrett v. Illinois Dep't of Corr.*, 803 F.3d 893, 898 (7th Cir. 2015). Hegde argues the doctrine applies in cases where the employer's decision-making process takes place over a period of time. Hegde argues he did not know until October 14, 2020 "that he was rejected for the new pediatric pulmonology position." [63 at 4].

However, this is a refusal-to-hire case, and the discrete act was Defendant's decision not to hire Dr. Hegde in October 2019. Discrete employer actions include "termination, failure to promote,…, or *refusal to hire.*" *Nat'l R.R. Passenger Corp.*, 536 U.S. at 114 (emphasis added). Defendant's decision was clearly communicated to Hegde as he recognized in multiple subsequent emails to Defendant. As one court explained:

> 'Discrete acts'…fall outside of the continuing violation exception, including such discrete employer actions 'as termination, failure to promote, denial of transfer, or refusal to hire.' Each one 'constitutes a separate actionable 'unlawful employment practice.' These discrete acts don't blossom into unlawful discrimination – either they are discriminatory when they happen, or they aren't.

*Straub v. Foods*, No. 1:17-CV-6401, 2020 WL 1914768, at *15 (N.D. Ill. Apr. 20, 2020) (citations omitted), aff'd sub nom., 840 F. App'x 886 (7th Cir. 2021).

Hegde relies on *Stewart v. CPC Intern., Inc.*, 679 F.2d 117 (7th Cir. 1982) which discussed the general principal that a continuing violation theory can be viable when "the employer's decision-making process takes place over a period of time, making it difficult to pinpoint the exact day the 'violation' occurred." *Id.* at 120. In addition to the fact that the *Stewart* Court affirmed the grant of summary judgment to the employer, *id.* at 123, Hegde's case is not one in which it is "difficult to pinpoint the

10

exact day the 'violation' occurred." Hegde otherwise does not cite a case finding a continuing violation in a similar circumstance to his, and the Court will not make the argument for him. *See e.g. Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001) (the court "cannot fill the void by crafting arguments and performing the necessary legal research" for a pro se litigant).

Indeed the Seventh Circuit has explained that "'an employer's refusal to undo a discriminatory decision is not a fresh act of discrimination.'" *Lucas v. Chi. Transit Auth.*, 367 F.3d 714, 723 (7th Cir. 2004) (citation omitted); *see also Barry v. City of Chicago*, No. 18-CV-2183, 2018 WL 3740536, at *2 (N.D. Ill. Aug. 7, 2018) (explaining that the continuing violation exception "does not apply to easily identifiable discrete acts, such as termination, failure to promote, denial of transfer, and refusal to hire"); *Novotny v. Plexus Corp.*, No. 13-CV-05881, 2017 WL 1093161, at *5 (N.D. Ill. Mar. 23, 2017) (rejecting plaintiff's attempt to use continuing-violation doctrine to save his untimely layoff claim by connecting the layoff to his later termination).

Thus the October 2019 decision not to hire him was the identifiable discrete act, triggering the time period for filing his claims. Therefore, Hegde's claims are untimely, and he has not exhausted his administrative remedies.

## CONCLUSION

For the stated reasons, Defendant's motion for summary judgment [44] is granted. The Clerk is directed to enter judgment in Defendant's favor and against Plaintiff and terminate this case.

E N T E R:

Dated: April 17, 2023

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge